Insurance Co. *v.* Diggs.

PLANTERS INSURANCE CO. *v.* E. P. DIGGS and JOHN K. ALLEN.

1. INSURANCE. *Insurable interest of plaintiff put in issue. Burden of proof on him. Evidence. Pleading and practice.* Upon an action seeking to recover against an insurance company the amount of a policy issued upon a building destroyed by fire, if the insurable interest of the plaintiff be put in issue by plea, the burden of proof is upon him, though he had possession at the time of the loss.

2. SAME. *Same. Lease. Forfeiture. The happening of the condition must be taken advantage of by landlord.* In case of a lease providing for forfeiture on failure to pay taxes, if payment is made before the forfeiture is taken advantage of by re-entry on the part of the landlord, the forfeiture will be saved.

FROM SHELBY.

Appeal from the Circuit Court. C. W. HEISKELL, Judge.

MCKISSICK & TURLEY for plaintiff.

HUMES· & POSTON for defendants.

FREEMAN, J., delivered the opinion of the court.

The two cases to be decided were consolidated and heard together in the court below, depending on precisely the same state of facts and issues. They are actions on two policies of insurance seeking to charge the insurance company for the amount of policies issued by said company on two tenement buildings in the city of Memphis which had been destroyed fire.

Several questions are presented and urged for re-

versal of the judgment below in favor of the plaintiffs.

First, it is insisted that the court erred in charging the jury on the question of the burden of proof of ownership of an insurable interest in the houses destroyed.

The court told the jury in substance, that the defense by the company was put on the ground that plaintiffs had no insurable interest in the property insured. This being their ground of defense must be proved, and by a preponderance of testimony; if proof equally balanced on this question, the jury were instructed to find for the plaintiffs.

This question of ownership of an insurable interest in the property was one of the leading questions in the case, and one on which the testimony raised several very nicely balanced issues to be decided by the jury. A correct statement of the rule of law on this question therefore became a matter of vital concern to the parties, but especially was the statement vital to the interest of the insurance company, if his honor has erred against it; for the rule laid down fixes the burden of showing by a preponderance of proof against the ownership by plaintiffs of an insurable interest on the part of the company, or else a verdict must go against the company.

It seems to be settled by all the authorities we have had access to, that the plaintiff must allege in his declaration that he was owner of the property, or that he had an insurable interest therein, and give some proof of the fact, and where his title or insurable in-

terest is put directly in issue by the pleadings, as in this case, by plea, he must prove the title or insurable interest in himself as part of his case in order to a recovery. See Declaration, 2 Greenl. on Ev., note to sec. 375, also secs. 376, 378, 380.

While this is the settled rule of law, we think the principle held by the Supreme Court of Maryland in the case of *Franklin Insurance Co.* v. *Chicago Ice Co.*, 11 Am. R., 479, equally sound, that "where plaintiff is shown to have been in possession of the property, claiming it and occupying as owner, this is *prima facie* evidence. A person in possession of land is *prima facie* presumed to be seized in fee. In the absence of proof of an outstanding title in others, or encumbrance on the property, says the court, this *prima facie* presumption of seizin in fee, growing out of such occupation, is sufficient to show an insurable interest."

This rule, however, would only be applicable where the case is made up under the general issue, but not where the title is specifically put in issue by a plea denying it, as in this case. See 2 Greenl. on Evidence, 378.

Under these rules, his honor erred in his instructions to the jury on this point, the burden of proof of ownership or of an insurable interest being on the plaintiff—the fact being put directly in issue by the plea of defendant.

The main question in the case, however, grows out of about the following state of facts: The property in question, or rather the land, had been inherited by

Jno. R. and Charles S. Allen with their sister, Willie P., who had intermarried with plaintiff Diggs. It had been leased to one Cordis by several leases, the last renewal lease expiring the 3d day of April, 1870. These leases were made by the guardian of the three Allens. Cordis had built the houses which were the subject of this insurance on this property, and was to have the privilege of removing them at the expiration of his lease. The lease, however, contained the following clause, providing for a forfeiture: Cordis had bound himself to pay during the term of the lease all the State, county and city taxes, and some other stipulations as to expenses that might be fixed on the property by any city ordinance. It was then agreed that he might remove the houses "provided he has complied with all the terms and conditions herein set forth, and it is further agreed, that should the said Cordis, during the term aforesaid, fail to pay the taxes as aforesaid, or the other charges provided for," then the lease was to terminate and end, and all improvements made on said lot were to be forfeited to the guardian, etc., and the parties were to have the right of "immediate entry upon and possession of the premises and improvements, with full power to dispossess said Cordis or his tenants, and all buildings and improvements to remain on said lot, as the absolute possession of the heirs." There was a subsequent provision for building a substantial plank fence with cedar posts, and leave the lot thus enclosed. This, however, is not included in the grounds for a forfeiture, and need not be further noticed at present.

The proof shows this property had been divided by a partition suit in March, 1870, and a lot with one of the houses built by Cordis assigned to each one of the heirs. It further appears that at the expiration of the lease, a portion of taxes had not been paid by Cordis, that is on a portion of the lots, but were paid as follows: On lot on Hernando street and on Allen Avenue, a part was paid on 8th of April, 1870, and another portion on 29th of said month. It further tends to show that a few days before the 2d of May, 1870, the plaintiffs claim to have taken possession under the clause for a forfeiture and re-entry, and notified the tenants of Cordis to pay rent to them in the future. They claim the houses as forfeited under these steps in accordance with the provisions of the lease; the defendants claim that no such forfeiture had been made effective before payment, and consequently plaintiffs had no title.

The question presented on these facts is, did the court charge the law correctly on this subject? He charged the jury that if they found from a preponderance of the testimony, that Cordis had paid all the taxes, according to the terms of the lease, before the expiration of the lease, they should find for the defendants, but if he had not paid all taxes before the expiration of the lease, the houses belonged to the plaintiffs, unless the proof showed they had waived their right to the houses.

It has long been settled as part of the common law that forfeitures for conditions of the kind found in this lease are not to be favored by the

courts, as said by Lord Mansfield, *Goodnight* v. *Davies,* Cowp., 803; Smith's L. Cases, vol. 1, part 1, 93.

Forfeitures are not favored in law, and when a forfeiture is once waived, the court will not assist it, and that leases, to be void on conditions such as we have now before us, will only be void at the option of the lessor; nor can any third person treat them as void or forfeited except the landlord. This was so held in a case where it was provided, "that on breach of certain conditions, it was to cease, determine, and become utterly void and of no effect," the lease providing "that it should be lawful for the lessor to re-enter and expel the tenant" as is substantially the case before us. This was held on the ground that these words showed that it was the intent of the parties that the lease should only be voidable by re-entry. See cases collated, Smith's Lead. Cases, vol. 1, part 1, notes to Dempor's case, pp. 94, 95 *et seq.* These authorities conclusively settle that the forfeiture is to be enforced at the option of the lessor, and by an affirmative act on his part, that is by re-entry for such purpose, based on failure to perform or breach of the conditions, and do not take effect until this is done. In courts of equity the rule is settled, that such forfeitures are relieved against wherever compensation can be made, the clause for re-entry being treated as a mere security for the payment of the rent. Story Equity Jurisprudence, secs. 1314–15. In the case of *Levett* v. *Bickford,* 8 Hum., 620, Judge Turley recognizes these principles, and says, "where the non-payment of rent operates as a forfeiture of the

lease absolutely, the right of entry does not accrue to the landlord by reason of such non-payment, unless he demand payment on the last day fixed for payment on the premises, because it is a severe remedy and not encouraged by law."

In the case of *Atkins* v. *Chilsom*, 11 Met., 113, after a review of the authorities in England, it was held "that a court of law would stay a suit brought for possession of the premises and to enforce the forfeiture upon the tenants, bringing the rents, interest and costs into court." Such seems to be the settled rule of the English courts. These cases show the principles on which the courts have gone in enforcing such forfeitures where the failure to pay was reserved.

This case is to perform a collateral condition, however, that is, to pay the taxes, but the principle is substantially the same. In such case we think the sound rule deducible from the authorities, that if the payment be made before the forfeiture is taken advantage of by re-entry by the landlord for this purpose, in accordance with the provision contained in the lease, the forfeiture is saved. The forfeiture is only enforcible by such affirmative action, the option being with the landlord, and if the tenant pay before this option is exercised and re-entry for this purpose, he has paid while the contract is in existence, the condition terminating it not having been taken advantage of, and he thereby saves himself from the forfeiture. This is not going so far as the case cited and the English cases therein referred to, but in a condition

like the present we think the fair construction of the rights of the parties.

In this view of the question, the court erred in its instructions to the jury and the case must be reversed.

We do not deem it necessary at present to discuss other questions raised by counsel farther than to say, as to the one made on the new trial granted by the judge at term previous to the one in which the present verdict was had, that we cannot review the correctness of his action in such a case.

Reverse the judgment and remand for a new trial.